IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BETTY JANE BROWN,

                         Plaintiff,

         v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

OPINION AND ORDER

14-cv-894-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Betty Jane Brown seeks judicial review of a final administrative decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff's application for disability benefits. Plaintiff's application has been denied on four occasions by two different administrative law judges. Plaintiff contends that the matter should be remanded yet again, for three reasons: the administrative law judge did not undertake a proper evaluation of the effect her obesity would have on her ability to perform substantial gainful work; he applied the "treating physician rule" erroneously; and he failed to establish a foundation for the vocational expert's testimony. (Initially, plaintiff raised an objection to the administrative law judge's failure to attach more weight to her migraine headaches but she has abandoned this argument.) My own review of the decision shows that administrative law judge reached the correct decision when he found plaintiff not disabled.

RECORD FACTS

A. Procedural History

Plaintiff Betty Jane Brown was born in July 1984.  She has a history of back pain dating from 2003.  She applied for disability benefits and supplemental security income in September 2004, but her application was denied by an administrative law judge in a decision issued on January 23, 2007.  She did not appeal, but filed additional applications for benefits a month later.  This second application was denied by an administrative law judge in a decision dated February 26, 2009.  Plaintiff requested review of that decision from the Appeals Council.  When her request was denied, she filed a civil action in federal court.  Her case was remanded from federal court in April 2010, on the government's motion.

Plaintiff was given a new hearing before a different administrative law judge, who denied her appeal in April 2011, finding her not disabled. AR 420-36.  The Appeals Council sent it back to the same administrative law judge in September 2013, after finding that he had not considered "the claimant's longitudinal medical history."  Order of Appeals Council, AR 444.  A new hearing was held on July 3, 2014, at which plaintiff was present, along with her attorney.

On August 28, 2014, the administrative law issued his opinion, finding that plaintiff had not been under a disability for purposes of her application for disability and disability insurance benefits and her application for supplemental security income.   Plaintiff did not request review from the Appeals Council.  The administrative law judge's decision became the final decision of the commissioner 60 days after it issued.  20 C.F.R. §§ 404.955,

404.984.

B. Plaintiff's Work History and Medical Record

Plaintiff is 5'5" inches tall and usually weighs between 350 and 365 pounds.  She lives with her young daughter and two nephews and has not worked since 2003, when she was a full-time line cook at a Country Kitchen restaurant.  AR 353-54.  She ended that job shortly after her motor vehicle accident in 2003.

Medical records show that plaintiff has been seeing Dr. William Shannon, a doctor specializing in physical medicine and rehabilitation, about four times a year on a regular basis since 2004.  AR 357.  At her first visit in February 2004, Shannon noted that plaintiff was complaining of having had back pain since her March 2003 motor vehicle accident, as well as pain in her right leg, neck and back.  AR 879-80.  At that time, his diagnosis was mild compression fractures at T1 and L1.  Shannon noted that plaintiff showed some evidence of disc space narrowing and muscle pain and an x-ray of her thoracolumbar spine showed some wedging of the lower thoracic and upper lumbar vertebrae.  AR 879.  He reported that she walked with a stable gait, had relatively full active thoracolumbar flexion, with moderate limitation with thoracolumbar extension, mildly restricted lateral bending and rotation and negative straight leg raising.  AR 880.  He prescribed cyclobenzaprine and occasional use of hydrocodone.  Id.

In May 2004, plaintiff continued to complain of pain.  AR 888.  Shannon started her on a trial of Oxycontin.  Id.  In July 2004, she told Shannon that she had been doing

3

reasonably well with her pain until she had another motor vehicle accident. AR 893. At the time, he diagnosed a strain of her cervical spine and upper right shoulder area and increased her dosage of Oxycontin. Id. Subsequent visits proceeded in similar fashion: plaintiff complained of pain in her lower back, sometimes extending into her lower thoracic and lower lumbar area and Shannon continued to prescribe Oxycontin or oxycodone. E.g., AR 894, AR 897, AR 900, AR 903, AR 906, AR 909, AR 915, AR 946, AR 949, AR 952, AR 955), AR 958, AR 963, AR 970, AR 975, AR 980, etc. On one occasion, March 21, 2007, Shannon noted *significant* pain in plaintiff's lower and midback, with some radiation of symptoms from her lower back in the left gluteal area, AR 955, but this was unusual.

In May 2007, Dr. Mina Korshidi, a consulting physician for the local Social Security office, completed a residual functional capacity assessment of plaintiff, finding that she could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, could stand or walk about 6 hours in a workday, sit about six hours and push or pull or operate hand controls all day. AR 208. Korshidi assessed no postural limitations and only one limitation of manipulation (in plaintiff's ability to do gross manipulations) and no visual, communicative or environmental limitations. AR 209-11.

Dr. Pat Chan, also a consulting physician for the local Social Security office, completed a second assessment of plaintiff in July 2007. He assessed exertional limitations that matched Dr. Korshidi's, except that he found plaintiff capable of lifting and carrying 50 pounds occasionally and 25 frequently. He assessed no postural, manipulative, visual, communicative or environmental limitations. AR 247-50.

4

On November 25, 2008, plaintiff's treating physician, Dr. Shannon, completed a Medical Examination & Capacity form for the Wisconsin Department of Workforce Development, in which he reported that plaintiff had multiple lumbar and thoracic disc herniations and chronic back pain. AR 273. He rated her prognosis "fair" and her condition chronic but stable." Id. In his opinion, she could not push or pull more than 10 pounds, would have to change positions every 15-20 minutes, had a maximum ability to lift 20 pounds occasionally, 10 pounds frequently and stand and walk for no more than one hour in an eight-hour day. Id. She could sit for at least two hours in an eight-hour day, needed to change positions every 15 minutes and should not bend or stoop. Id. She had unlimited ability to use her hands and communicate and would not need any adaptive devices or other accommodations to help her function effectively in the workplace; her cognitive abilities were intact; and she could participate in job search activities or work for two hours a day. Id.

In a Musculoskeletal Impairment Residual Functional Capacity Questionnaire completed for plaintiff on May 6, 2009, Shannon listed his diagnosis of plaintiff's condition as multilevel thoracic and lumbar disc protrusions, along with "chronic severe back, hip, & leg pain." AR 278. He added that plaintiff had moderate to severe pain in her lower back with radiation into her hips and legs that was worsened by any prolonged activity, including sitting, standing and walking, and her experience of pain was frequently "sufficiently severe to interfere with her attention and concentration," AR 279, and that she could sit and stand continuously for no more than 30 minutes at a time, id., and could not sit, stand or walk for

two hours or longer in an eight-hour work day.  AR 280.  In addition, she would have to lie down one to two hours during each workday, could not lift any weight of 10 pounds or more, id., and could not do any reaching, pushing or pulling. AR 281.  In his opinion, plaintiff's impairments had lasted at least 12 months or could be expected to last that long. AR 279.  He estimated that plaintiff would be absent from work 3 days a month because of impairments.

In a supplemental report completed on January 17, 2011, Shannon wrote that plaintiff's condition had not changed significantly and he affirmed his May 6, 2009 description of her condition and limitations.  AR 827-28.  On June 10, 2014, Shannon signed a supplement to his May 6, 2009 report, saying that there had been no change in plaintiff's condition since the 2009 report.  AR 1163.  (In each of the two supplemental reports, Shannon wrote that plaintiff's musculoskeletal impairments met the qualifications for Listing 1.04, that is, an impairment so severe that a person who is not working is considered unable to do any gainful activity and is automatically considered disabled.  20 C.F.R. § 404.1520(d).  Plaintiff does not contend that her condition meets those specified in the Listing.)

On February 14, 2014, Dr. Kurt Reintjes undertook a consultative examination of plaintiff on referral from the commissioner.  AR 1075-77.  He noted that plaintiff's x-rays showed that she had normal alignment of her lumbrosacral spine, a "mild likely positional shift noted at the L1 to L2 levels with mild facet degenerative changes noted at the L5 level," normal curvature of the spine with normal disc height and normal disc spacing.  AR 1076.

The AP (front-to-back) x-ray of her thoracic spine showed facet arthropathy "of a mild severity throughout with normal alignment." Id. The lateral view (back-to-front) showed "normal curvature of the spine with normal disc space height and very moderate increases in anatomic kyphosis ([a type of spinal curve] in the upper thoracic spine." Id.

Reintjes found that plaintiff had full range of motion in her upper extremities and a bilateral grip strength of 5/5 with intact dexterity. Id. Examination of her lower extremities showed a full range of motion, with no redness, swelling or effusion of any other joints. Examination of her cervical spine was within normal limits. Her thoracic spine demonstrated no tenderness at the T1 though 12th levels, but she described a sharp pain in the right lateral paraspinal region of the L3-L4 spine. She could stand on her heels and toes with no tenderness or pain and she could flex forward to a maximum of 40 degrees. Her straight leg raises were negative bilaterally in the sitting position but she had difficulty demonstrating leg raises in the supine position. AR 1076-77. Her gait and station were within normal limits. AR 1077.

Completing a Social Security questionnaire, Reintjes said that plaintiff could lift and carry weights up to 50 pounds continuously and weights up to 100 pounds occasionally; she could sit, stand or walk for two hours at a time without interruption, could sit for a total of 8 hours a day and stand and walk for a total of 7 hours, so long as she could rest between shifts. AR 1069-70. He estimated that plaintiff could use her hands and feet for such things as operating foot controls and reaching overhead for a full day, AR1071, occasionally climb stairs, balance, stoop, kneel, crouch and crawl, but should never climb a ladder, AR 1072,

7

and had no environmental limits except unprotected heights.  AR 1073.

### C. Administrative Hearing

At her administrative hearing in 2014, plaintiff testified that since the start of 2004, she had been seeing Dr. Shannon every three months and sometime more frequently when her pain increased, id., and that he had prescribed narcotic pain medication, including oxycontin and oxycodone, which she was still using at the time of the hearing.  AR 357-58. She described her back pain as between five to six on 10-point scale, with medication. Without it, she said, her pain required hospitalization.  AR 358.  She could walk "a couple blocks" before the pain became too intense.  Id.

Plaintiff testified that Dr. Shannon had never given her a range of motion test or an assessment of her ability to work and had never sent her to an occupational therapist for an evaluation.  AR 359.  He had prescribed medication for her migraine headaches, which she said she had been having about five times a week and which lasted for three to four hours or for days at a time.  AR 360.  Since starting the medication, she has had the headaches about twice a week, for about six hours at a time.  Id.  She can put on her own shoes and socks, but with difficulty, AR 360-61, does not take baths but does shower for long periods of time.  Id.  She testified that she had applied for jobs but had not been able to find one because of the restrictions on the number of hours she can work.  AR 360.

In response to questioning by the administrative law judge, plaintiff testified that she takes care of her house, does the dishes, spends a lot of time with her daughter who was nine

at the time, and with her teen-aged nephews, often going with them to a nearby park, where she either walks around or sits on a bench. AR 362-63.  She drives about four to five times a week, taking her children to school if they miss the bus, picking them up after school and going to appointments.  AR 363-64.  She does her own shopping, spends time with her family a couple times a week, has cookouts, plays cards, cooks, folds laundry and cleans her house.  AR 364-65.  She goes to the movies occasionally.

Jacquelyn Wenkman testified as a vocational expert familiar with Social Security regulations defining terms of sedentary, light, medium, heavy and very heavy, and with the regulations defining unskilled, semi-skilled and skilled work.  AR 368.  It was her opinion that a person of plaintiff's age, education and work history could not perform any of the work plaintiff had done in the past if she was limited to sedentary work and precluded from crawling, kneeling or climbing of ropes, ladders or scaffolds and from more than occasional stooping, bending, crouching, twisting or climbing of ramps or stairs and limited to standing no more than 30 minutes at a time or sitting for more than 30 seconds at a time, precluded from more than frequent reaching in any direction with either arm and from working at unprotected heights or around dangerous machinery and likely to be off task five to 10 percent of the work day in addition to regularly scheduled breaks from work.  Wenkman testified that such a person could perform other jobs, such as order clerk, office helper, greeter/attendant, video surveillance, assembler, telemarketer or call center employee voicing written messages from hearing impaired persons to non-hearing impaired listeners, thus speeding up telephone communication between them.

9

Wenkman noted that, although jobs such as greeter/attendant are often categorized as "light" exertion because they require both sitting and standing, many of those jobs can be performed seated, as she has learned from her own experience in placing many people in those kinds of jobs.  AR 372-73.   In addition, she gave the numbers of such jobs in the Wisconsin economy.   Video surveillance monitor, for example, accounted for 921 jobs in the state; call center workers accounted for 712 jobs (as she explained, the Dictionary of Occupational Titles does not list such a job, so she uses "telephone solicitation" at an unskilled level, needing no more than one week of training, AR 373); office helper, 1660; assembly, 1750 (counting only jobs that had a sit/stand option and did not require frequent hand use); order clerk, 760; greeter/attendant jobs that can be performed seated, 906.  AR 374-76.  In response to questions from plaintiff's counsel, Wenkman testified that if plaintiff could not stand for more than an hour or two or sit for more than four hours at a time, she could not perform a full-time job.  AR 375-376.

D. Administrative Law Judge's Decision

The administrative law judge issued his decision on August 28, 2014, concluding that plaintiff was not disabled under the Social Security Act, but retained the ability to work in certain sedentary occupations that could accommodate her physical limitations.   He completed four of the five steps for determining disability, 20 C.F.R. § 404.1520(a).  (He did not make a specific finding at step four that plaintiff had no past relevant work, but that is obvious from the record, which shows that she had not worked since 2003, when she held

a job as a line cook).  He found that (1) plaintiff had not engaged in any substantial gainful acitivity since her alleged onset date of January 24, 2007; (2) she had the severe impairments of back impairment, obesity and migraine headaches; but (3) her impairments, considered alone or in combination, did not meet or medically equal the criteria of any listed impairment.  At step five, he found that plaintiff had the residual functional capacity to perform less than the full range of sedentary work, so long as she was not required to lift and carry more than 10 pounds, crawl, kneel or climb ropes or ladders; or stoop, bend, crouch, twist or climb ramps or stairs more than occasionally.  In addition, she would be precluded from more than frequent reaching in any direction with either upper extremity and from working at unprotected heights or around dangerous machinery.  She was likely to be off task about five to 10 percent of the workday, in addition to regularly scheduled breaks from work.  Relying on Wenkman's testimony, the administrative law judge found that plaintiff could perform the six different sedentary jobs that Wenkman had identified and that these jobs existed in significant numbers in Wisconsin.


OPINION

Plaintiff criticizes the administrative law judge's decision in three respects, saying that he failed to give weight to the opinions of Dr. Shannon, her treating physician, in violation of the "treating physician" rule; he did not properly evaluate her obesity; and he relied improperly on the testimony of the vocational expert.

Under the treating physician rule, the opinions of a treating source are to be given

controlling weight so long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The administrative law judge explained at length and in detail why he did not accept Dr. Shannon's opinion that plaintiff could not work at a full-time sedentary job. He noted the unexplained variance between the doctor's treatment notes and his responses to questionnaires concerning plaintiff's functional capacity, plaintiff's own testimony about her ability to walk, do household chores, make meals and visit her family and friends, as well as her report to him at her second visit in February 2004 that she was working as a cashier "and doing reasonably well with her job." AR 879.

Plaintiff objects to the reliance on plaintiff's self-reporting of her regular activities, citing the many cases in which administrative law judges' decisions have been remanded because they were based on an assumption that just because a person could engage in household chores and outdoor exercise she could also hold down a job. E.g., Mendez v. Barnhart, 439 F.3d 360, 362 (7th Cir. 2006) (("As we have said, it is proper for the Social Security Administration to consider a claimant's daily activities in judging disability, but we have urged caution in equating these activities with the challenges of daily employment in a competitive environment, especially when the claimant is caring for a family member."); Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000) ("minimal daily activities such as preparing simple meals, weekly grocery shopping, taking care of family members, and playing cards do not establish that a person is capable of engaging in substantial physical activity.")

12

In this case, the administrative law judge did not rely on plaintiff's daily activities as the reason he believed her capable of holding employment, but discussed them to show that Dr. Shannon's assessment of her physical impairments was contradicted not only by the discrepancies between the assessment and his observations but also by plaintiff's own reports of her ability to move around at home.  The administrative law judge noted that plaintiff had testified that she could not sit or stand for more than 15 minutes at a time, but she described her interests as including going to the park with her daughter, playing with her daughter and two nephews, going to sporting events, sewing, using the computer and doing basic household cleaning, laundry, dish washing and meal preparation.  AR 299.

The administrative law judge rejected Dr. Shannon's statements that plaintiff had significantly limited tolerance for sitting or standing and would be absent from work for more than three days a months, because, as he said, those statements were inconsistent with the doctor's "quite benign" objective findings over time, which offered little support for the degree of limitation the doctor assessed.  AR 300.  As he explained, plaintiff's x-rays did not disclose abnormal alignment or anything more than mild facet arthropathy or facet degenerative changes.  AR 297.  The x-rays did show that she had normal curvature of her thoracic spine and normal disc height and "a very moderate increase in anatomic kyphosis" (an outwardly curving spine).  Id.  Plaintiff had a stable gait, mild to moderate limitations in her thoracolumbar range of motion, negative straight leg tests, full strength at 5/5 in all extremities, normal sensation and normal coordination.  Id.  No doctor had ever recommended surgery or found any nerve root impingement.  AR 299.

13

Although the administrative law judge rejected Dr. Shannon's assessment of plaintiff's sitting and standing tolerances on the ground that they were not supported by any record of objective observations of plaintiff at clinic visits, he did take into account plaintiff's postural limitations to the extent that they were supported by Dr. Shannon's objective findings.  Id.  In addition, he took into consideration plaintiff's morbid obesity.  Id.  In the end, he gave Dr. Shannon's opinion "some weight but not controlling weight," incorporating a sedentary exertional limitation, a sit/stand option, a reaching limitation and postural limitations, which he believed were reasonable, as well as a ban on working near dangerous machinery or at unprotected heights, because plaintiff was taking medications that could cause intermittent drowsiness.  AR 300-01.  In giving plaintiff a sedentary exertional limitation, the administrative law judge gave more weight to Dr. Shannon's opinion than to the opinions of Dr. Reintjes, the consulting physician, and Dr. Pat Chan, a reviewing agency physician, both of whom thought plaintiff capable of medium exertional work, and the opinion of a second agency physician, Dr. Mina Korshidi, who assessed plaintiff as being capable of light work.

Plaintiff acknowledges that the administrative law judge took note of her extreme obesity, but argues that he failed to make the bridge between that condition and the numerous physical problems described in the record.  Plaintiff cites SSR 02-1p for several propositions:  (1) obese individuals may have limitations in exertional, postural and manipulative functions; (2) the agency is required to assess the effect obesity has upon the claimant's ability to perform routine movement and necessary physical activity within the

14

work environment; (3) the agency should take into account the fact that obese individuals may have problems with the ability to sustain a function over time; and (4) the combined effects of obesity with other impairments may be greater than might be expected without obesity.  She contends that the administrative law judge failed to take these propositions into account and give them the proper weight, but she does not identify what more he could have done.  He had ten years of Dr. Shannon's records before him when he made his decision.  None of these records showed that the doctor considered plaintiff's obesity separately from her particular musculoskeletal problems.  From his frequent suggestions to her to lose weight, it appears that Dr. Shannon considered plaintiff's excess weight a contributor to her problems, but he never specified what limitations he attributed to her weight and what to other factors.  This was true of the other consulting and reviewing doctors as well.  None of them made any attempt to separate plaintiff's musculoskeletal problems from her obesity.  It is reasonable to assume that they took the obesity into account in reaching their decisions about plaintiff's ability to work.

In any event, the administrative law judge's own decision refutes plaintiff's contention that he ignored her obesity.  He said explicitly in his decision that he had taken her obesity into account at all relevant steps of his evaluation and in particular, he had considered "the fact that obesity may increase the severity of the claimant's back pain symptoms and may increase her fatigue and [lessen] her ability to sustain work activity on a regular and continuing basis." AR 250.  He explained that he did not adopt Dr. Reintjes's opinion that plaintiff was capable of a range of medium work because "the longitudinal record

demonstrates that [plaintiff's] back impairment *together with her morbid obesity* would prevent her from working above the sedentary exertional level on a regular and continuing basis." AR 301 (emphasis added). It is plain that he realized that plaintiff was obese, that her obesity would make it more difficult for her to move around and that it would have an effect upon her ability to work.

Plaintiff's last objection is that the administrative law judge failed to establish a foundation for the vocational testimony. She cites the recent opinions of the Court of Appeals for the Seventh Circuit such as <u>Herrmann v. Colvin</u>, 772 F.3d 1110, 1113 (7th Cir. 2014), and <u>Voigt v. Colvin</u>, 781 F.3d 871 (7th Cir. 2015), in which the court expressed concern about the way in which vocational experts estimate the number of jobs in the local and national economy that a particular claimant would be able to perform. It is true, as pointed out in both <u>Voigt</u> and <u>Herrmann</u>, that vocational experts, such as Wenkman, must rely on the Dictionary of Occupational Titles for determining the number of jobs, although a journal titled Occupational Employment Quarterly is also available. <u>Herrmann</u>, 772 F.3d at 1113; <u>Voigt</u>, 781 F.3d at 879. However, as the court of appeals has pointed out, the Quarterly simply reports the number of jobs in broad categories, thus requiring the vocational expert to make a rough estimate of how many specific jobs that the claimant could perform fall within that category.

Although <u>Herrmann</u> and <u>Voigt</u> suggest that no vocational expert opinion can be relied upon until the Social Security Administration or some other federal agency undertakes an update of the Dictionary of Occupational Titles or creates an acceptable substitute, the court

has not yet overturned an administrative law judge's denial of an appeal on that basis alone.

It would make no sense to overturn the administrative law judge's finding in this case, in

which the record shows plaintiff to be capable of at least sedentary work and with none of

the psychological problems that plagued the plaintiff in <u>Voigt</u> or the "assemblage of

impairments" that Ms. Herrmann suffered.  <u>Herrmann</u>, 772 F.3d at 1111.  It was not

unreasonable for the administrative law judge to rely on the vocational expert's identification

of a range of sedentary work that a person with plaintiff's physical restrictions could

perform, particularly when it does not require a vocational expert to observe that the kinds

of jobs Wenkman identified exist throughout the community.  Anyone who has paid a visit

to a doctor or hospital could confirm the existence of jobs that can be performed by persons

sitting down to check in patients and confirm their insurance or payment plans.

In summary, I conclude that the administrative law judge reached the right decision

when he found that plaintiff had not been under a disability from her onset date of January

24, 2007.

ORDER

IT IS ORDERED that plaintiff Betty Jane Brown's motion for summary judgment,

dkt. #9, is DENIED and the decision of defendant Carolyn W. Colvin, Acting

Commissioner of Social Security, denying plaintiff's application for disability insurance

benefits and Social Security Income is AFFIRMED.  The clerk of court is directed to enter

judgment for defendant and close this case.

Entered this 17th day of November, 2015.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

18